### PENSION BENEFIT GUARANTY CORPORATION, Appellant,

v.

### Richard E. SCHERLING and Harold Wendorf, Appellees.

### No. 89–1918.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 16, 1990.

Decided May 24, 1990.

James J. Armbruster, Washington, D.C., for appellant.

David M. Elderkin and Raymond R. Stefani, Cedar Rapids, Iowa, for appellees.

Before LAY, Chief Judge, BEAM, Circuit Judge, and WOODS,[*] District Judge.

LAY, Chief Judge.

The Pension Benefit Guarantee Corporation (PBGC or corporation) appeals the dismissal of its action brought against two former administrators of the Killian Company Retirement Plan (the Plan), Harold Wendorf and Richer E. Scherling, for breach of their fiduciary duties. The corporation sued in its capacity as a trustee to the Plan, pursuant to its statutory powers under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461 (1982 & Supp. V 1987) (ERISA or the Act). The district court,[1] 719 F.Supp. 785, dismissed the case as barred by the statute of limitations contained in 29 U.S.C. § 1113.[2] We reverse and reinstate the complaint.

BACKGROUND

Upon retiring from their positions as senior officers of Killian in January of 1982, Wendorf and Scherling withdrew large payments from the Plan. In March of 1982 Killian notified the PBGC it intended to terminate the Plan, and one month later Killian filed for bankruptcy. In July, 1985, the bankruptcy trustee and the PBGC agreed to terminate the Plan and appoint the PBGC trustee. Three years later the PBGC brought this action against Scherling and Wendorf alleging their lump-sum withdrawals breached their duties as fiduciaries to the plan.

The sole issue on appeal is whether the district court applied the correct statute of limitations in dismissing the action. The district court reasoned that section 1113 by its own terms governs claims "with respect to a fiduciary's breach of any responsibility, duty or obligation" set forth in ERISA.[3] The court concluded that this section governs all breach of fiduciary duty actions brought under Title 29 of the United States Code, including when the PBGC is the plaintiff.[4] Applying section 1113, the court found the suit barred because it was brought more than six years after the withdrawals allegedly constituting the breach of fiduciary duties.

---

[*] The HONORABLE HENRY WOODS, United States District Judge for the Eastern District of Arkansas, sitting by designation.

1. The Honorable David R. Hansen, United States District Court for the Northern District of Iowa.

2. For ease of reference, this opinion will refer to the sections of ERISA according to the designations given upon codification in the United States Code.

3. Section 1113 reads more completely as follows:

No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—
(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
(2) three years after the earliest date (A) on which the plaintiff had actual knowledge of the breach or violation, or (B) on which a report from which he could reasonably be expected to have obtained knowledge of such breach or violation was filed with the Secretary under this subchapter.

4. In concluding that section 1113 applied to the whole of Title 29, however, the court apparently relied on the text of the code as recorded in the

The PBGC argues that the court should have applied the limitations period of 29 U.S.C. § 1303(e)(6), which governs when "the corporation brings the action as a trustee."[5] The PBGC emphasizes that it brings this action "as a trustee" to the Plan. Section 1303(e)(6) allows the PBGC, as a trustee, to bring actions *three years from the date of its appointment as trustee.* This action was within those limits.

We find that the district court's application of section 1113 misconstrued the purpose of that section and the relationship between the different subchapters of ERISA.

## DISCUSSION

As codified in the United States Code, ERISA is divided into three subchapters.[6] Subchapter I regulates the establishment and operation of ongoing benefits plans, and grants the Secretary of Labor the authority to administer and enforce the provisions of the subchapter. *See* 29 U.S.C. § 1132. Subchapter I also defines the duties of plan fiduciaries, and provides for civil and criminal enforcement of those obligations. *See* 29 U.S.C. §§ 1104–1132; *see also Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 361 n. 1, 100 S.Ct. 1723, 1726 n. 1, 64 L.Ed.2d 354 (1979). Under section 1132 of subchapter I, an action for breach of fiduciary duty may be brought by the Secretary of Labor, a plan participant, or another fiduciary. The limitations period of section 1113, which also is in subchapter I, governs actions brought by these parties. *See, e.g., Brock v. TIC Int'l Corp.*, 785 F.2d 168 (7th Cir.1986).

Subchapter I does not discuss the PBGC, which is created and governed by subchapter III. The PBGC regulates plans undergoing termination, and guarantees certain plan benefits. Under 29 U.S.C. § 1342(c), the PBGC has authority to appoint itself trustee of a plan in termination.

In general, the PBGC has no power to sue under subchapter I. *See* 29 U.S.C. § 1303(e)(1) (only authorizing PBGC to sue to enforce provisions of subchapter III). The sole authority for the PBGC to act as trustee is found in subchapter III, *see* 29 U.S.C. § 1342(c), and it may act only under the powers given to it by Congress.

When acting as a trustee, however, the PBGC has the power "to collect for the plan any amount due the plan," and "to commence, prosecute, or defend on behalf of the plan any suit or proceeding involving the plan." 29 U.S.C. §§ 1342(d)(1)(B)(ii) and (iv). As the district court correctly

---

United States Code Annotated. In that edition, section 1113 reads as applying to "action[s] commenced under this *title*." (emphasis added). The district court concluded that "title" must refer to Title 29 of the United States Code. Because this action was commenced under Title 29, the court found section 1113 controlling. Reference to the official United States Code, however, points out that "title" should read "subchapter." A note following the section, prepared by the Office of the Law Revision Counsel of the House of Representatives explains that the reference to "this subchapter" originally read "this title," meaning Title I of Pub.L. No. 93–406, 88 Stat. 829, 889, the law that enacted the subchapter. Upon codification the titles of the session law were re-named subchapters to fit the scheme of the United States Code. Comparing the public law version with the codified version reveals that each reference to "title" in the public law has been changed to "subchapter" in the Code. *Compare* Employee Retirement Income Security Act of 1974, Pub.L. No. 93–406, 88 Stat. 889, *reprinted in* 1974 U.S.Code Cong. & Admin.News 935–1187, *with* 29 U.S.C. §§ 1001–1461 (1982 & Supp. V 1987).

**5.** Section 1303(e)(6) more completely reads:

(A) [A]n action under this subsection may not be brought after the later of—
(i) 6 years after the date on which the cause of action arose, or
(ii) 3 years after the applicable date specified in subparagraph (B).
(B)(i) Except as provided in clause (ii), the applicable date specified in this subparagraph is the earliest date on which the corporation acquired or should have acquired actual knowledge of the existence of such cause of action.
(ii) If the corporation brings the action as a trustee, the applicable date specified in this subparagraph is the date on which the corporation became a trustee with respect to the plan if such date is later than the date described in clause (i).

**6.** Although ERISA as passed was divided into four "titles," upon codification into Title 29 of the United States Code, the "titles" were re-named "subchapters" in order to fit with the scheme of the Code. To avoid confusion and for ease of reference, this opinion will refer to these divisions as "subchapters."

noted, these subchapter III powers allow the PBGC to sue Wendorf and Scherling for breach of the fiduciary duties described under subchapter I.[7]

The PBGC, therefore, "brings the action as a trustee" of the Killian Plan. By its plain terms, section 1303(e)(6) applies to such suits.

Wendorf and Scherling argue, however, that while section 1303(e)(6) in general governs actions brought by the PBGC as a trustee, *breach of fiduciary actions* are an exception. They argue that section 1113 applies to any action "with respect to a fiduciary's breach of any responsibility, duty or obligation" regardless of who brings the action. They insist that there is no language in this provision that excepts the PBGC.

We disagree. Section 1113 by its terms is limited to actions "commenced under * * * subchapter [I]" for breach of fiduciary duty. A suit commenced pursuant to the PBGC's powers "as a trustee" is a suit commenced under subchapter III, and not subchapter I.[8] Section 1113, therefore, does not apply to such suits.

7. Reference to 29 U.S.C. § 1342(d)(1)(B)(ii) makes clear that these powers allow the PBGC to sue for matters arising under subchapter I of ERISA. Section 1342(d)(1)(B)(ii) states that the trustee's powers "includ[e]" but are "not limited to" the power to collect amounts due under 29 U.S.C. § 1082. This section, which is in subchapter I, describes the obligations of certain persons to fund benefits plans. In addition, 29 U.S.C. § 1342(d)(3) states that a termination trustee becomes a fiduciary to the plan. A fiduciary has the power to bring suit for another fiduciary's breach of duties. *29 U.S.C. § 1132.*

8. Our conclusion that the language "commenced under this subchapter" refers to the persons authorized to bring suit, and not the subject matter of the suit, is based on the fact that the rest of the language in the first clause of section 1113 unmistakably refers to the subject matter of the suit. The phrase "commenced under this subchapter" would be completely ambiguous and unnecessary if its purpose were to refer to the substantive law of the subchapter, and not to the parties authorized to bring suit by the subchapter.

9. Wendorf and Scherling complain that applying section 1303(e)(6) in these circumstances gives the PBGC complete control over the starting point for the statute of limitations. Section

We conclude there is no conflict between section 1113 and section 1303(e)(6). Section 1113 applies to actions commenced by those persons or entities whose authorization to sue comes from subchapter I, and section 1303(e)(6) applies to actions brought by the PBGC in its capacity as a trustee.[9]

Reversed.

1342 grants the PBGC discretion to decide whether and when to appoint a trustee for a plan in termination proceedings. The statute of limitations runs for three years from the date the PBGC appoints itself trustee. 29 U.S.C. § 1303(e)(6). Allowing the PBGC this discretion, the defendants assert, contravenes the public policy that a statute of limitations should protect a defendant from claims difficult to defend against because of the elapsed time.

If the statute of limitations were not to start when the PBGC takes over as trustee, however, the PBGC easily could be caught powerless to pursue actions against those responsible for forcing the plan into an underfunded termination. Annual reports of the plans are filed with the Secretary of Labor, not the PBGC. 29 U.S.C. § 1021. If these reports reveal underfunding or a breach of fiduciary duty, the Secretary of Labor and not the PBGC is authorized to bring suit to correct the matter, *29 U.S.C. § 1132,* provided the plan is not in termination proceedings. Quite possibly, the Secretary of Labor might overlook a violation that later causes the underfunded termination of the plan. The PBGC then might be forced to take over as trustee at a time when the limitations period in section 1113 has already expired. Section 1303 avoids this problem by giving the PBGC three years from the date it becomes trustee to discover and pursue these matters.