Ronald **CUNNINGHAM,**
et al., Appellants,

v.

**PENSION BENEFIT GUARANTY
CORP.,** et al., Appellees.

No. 5:99–CV–0026.

United States District Court,
N.D. Ohio,
Eastern Division.

June 29, 1999.

610

Robert Michael Stefancin, Brouse & McDowell, Akron, OH, for Ronald Cunningham and Charles Schott, appellants.

William G. Beyer, Israel Goldowitz, Nathaniel Rayle, Sherease Pratt, James J. Keightley, Nancy S. Heermans, Pension Benefit Guaranty Corporation, Office Of The General Counsel, Washington, DC, for Pension Benefit Guaranty Corp., appellees.

## OPINION AND ORDER

GWIN, District Judge.

Appellants Ronald Cunningham and Charles Schott appeal this case from the United States Bankruptcy Court, Northern District of Ohio.[1] On November 3, 1998, the bankruptcy court entered its order of decision dismissing the plaintiffs' adversary complaint for declaratory and injunctive relief against Defendants Pension Benefit Guaranty Corp. ("PBGC"), Bank One, N.A., and Star Bank, N.A..[2]

1. See Cunningham, et al. v. PGBC, et al, Adversary Proceeding No. 98–6189, Case No. 93–61 (In re SiMetco, Inc.), filed June 17, 1998 (Bankr.N.D.Ohio).

2. With its November 3, 1998 order, the bankruptcy court granted motions to dismiss and for judgment on the pleadings, or alternative-

In dismissing the case, the bankruptcy court said it lacked subject matter jurisdiction under 28 U.S.C. § 157. The court reasoned that the adversary case would not affect the Debtor, SiMetco, Inc., or its bankruptcy estate.

On appeal, Appellants Cunningham and Schott state the sole issue for review as follows: "[W]hether the Bankruptcy Court erred in determining that it lacked subject matter jurisdiction to interpret a confirmation order which it entered as part of a Chapter 11 bankruptcy case, and to interpret the plan of reorganization which was confirmed by that order." Appellant's Brief at 1.[3]

In deciding this issue, the Court specifically reviews whether the bankruptcy court properly determined that it lacked subject matter jurisdiction because the underlying adversary case is not "related to" a case under Title 11. Having reviewed the record, the Court affirms the bankruptcy court's order dismissing Adversary Case No. 98–6189 for lack of subject matter jurisdiction.

### I. Standard of Review

When reviewing orders on appeal from the bankruptcy court, a district court reviews the bankruptcy court's findings of fact under a clearly erroneous standard, but reviews the bankruptcy court's conclusions of law *de novo*. *In re Baker & Getty Financial Servs., Inc. v. Rafoth*, 106 F.3d 1255, 1259 (6th Cir.), *cert. denied, Wesbanco Bank Barnesville v. Customer Credi-*

tors, —— U.S. ——, 118 S.Ct. 65, 139 L.Ed.2d 27 (1997).[4] Federal Rule of Bankruptcy Procedure 8013 instructs district courts to give due regard to "the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed.R.Bankr.P. 8013. A reviewing court should not disturb the bankruptcy court's findings of fact unless there is the "most cogent evidence of mistake of justice." *In re Baker & Getty*, 106 F.3d at 1259 (citations omitted).

Here, Appellants ask this Court to review the bankruptcy court's dismissal of a case for lack of subject matter jurisdiction. Jurisdictional questions are questions of law and are therefore reviewed *de novo*. *McLeod v. Diversified Collection Servs. (In re McLeod)*, 100 F.3d 957 (Table), No. 95–3875, 1996 WL 627747, *2 (6th Cir. Oct. 26, 1996) (citing *In re Tom–Mac, Inc.*, 76 F.3d 678, 682 (5th Cir.1996)).

With this standard in mind, the Court adopts the bankruptcy court's findings of facts and decides the issue on appeal.

### II. Background

On or about September 17, 1993, Debtor SiMetco, Inc., not a party to the instant case, filed a voluntary petition for bankruptcy relief pursuant to Chapter 11 of Title 11, United States Code. Debtor SiMetco maintained a pension plan for hourly employees. The Employee Retirement Income Security Act of 1974, ("ERISA"), 29 U.S.C. §§ 1301, *et seq.*, governs the pension plan. Under ERISA,

---

ly, for summary judgment, filed by Defendants Bank One and the PBGC, respectively.

**3.** In their notice of appeal, appellants designated four related issues: (1) whether the bankruptcy court erred in granting Bank One's motion to dismiss the adversary proceeding; (2) whether the bankruptcy court erred in granting the PBGC's motion for judgment on the pleadings or, alternatively, for summary judgment in the adversary proceeding; (3) whether the bankruptcy court erred in deciding that it lacked subject matter jurisdiction over the issues raised in the adversary proceeding; and (4) whether the bankruptcy court erred in deciding the adversary pro-

ceeding was not "related to" a case under Title 11.

**4.** *See* Bankruptcy Rule 8013 which provides:

On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.
Fed.Bankr.R. 8013.

Debtor SiMetco was required to make funding contributions to maintain the pension plan. Certain asset trustees, namely Bank One, Star Bank, and later the PBGC, received SiMetco's funding payments and held the assets of the pension plan.[5]

On or about September 16, 1994, Debtor SiMetco with Simcala, Inc. jointly filed a Plan of Reorganization with the bankruptcy court. The Reorganization Plan was a liquidating plan, disposing of Debtor SiMetco's assets. SiMetco no longer carries on business.

On January 5, 1995, the United States Bankruptcy Court for the Northern District of Ohio entered its order confirming the Reorganization Plan. The terms and conditions of the Reorganization Plan classified the rights and priority of creditors, including the PBGC. Under the Reorganization Plan, the PBGC was designated a general unsecured creditor with voting rights.[6]

Almost three years after confirmation of the Reorganization Plan, the PBGC filed a lawsuit in the United States District Court for the Southern District of Ohio.[7] There, the PBGC sues individually Ronald Cunningham and Charles Schott, appellants herein, and Bank One and Star Bank. The PBGC alleges these defendants breached fiduciary duties by failing to exercise care, skill, prudence, and diligence in investing and managing SiMetco's pension plan assets. The PBGC makes claim under ERISA, 29 U.S.C. §§ 1301, *et seq.*

Because of the PBGC's federal suit in the Southern District of Ohio, Appellants Cunningham and Schott filed an adversary proceeding in the United States Bankruptcy Court for the Northern District of Ohio. In the adversary proceeding, Appellants sought declaratory and injunctive relief against the PBGC and the two banks. Appellants asked the bankruptcy court to interpret the Reorganization Plan and enforce the court's January 5, 1998 plan confirmation order. The bankruptcy court declined to exercise post-confirmation jurisdiction over the adversary proceeding.[8]

With this background, this Court decides whether the bankruptcy court erred in determining it lacked subject matter jurisdiction over the adversary proceeding.

### III. Discussion

Appellants Cunningham and Schott say the bankruptcy court erred by granting Bank One's motion to dismiss and the PBGC's motion for judgment on the pleadings, or alternatively, for summary judgment. Appellants contend the bankruptcy court wrongly decided that the underlying adversary proceeding was not a "related to" case under Title 11. Appellants also argue that the bankruptcy court erred by not exercising jurisdiction to interpret the Reorganization Plan and to enforce its own plan confirmation order. For the reasons

---

5. Bank One served as asset trustee from the inception of the pension plan until September 13, 1991. Star Bank served as asset trustee for the period September 13, 1991 through January 3, 1995. From January 3, 1995 to date, the PBGC has served as asset trustee. The PBGC is a wholly-owned United States government corporation established under ERISA.

6. The PBGC filed two proofs of claim in the bankruptcy case: a claim for $5,208,700 for unfunded benefit liabilities under the pension plan, and a claim for $3,204,307 for unpaid minimum funding contributions. On or about December 7, 1994, the PBGC agreed its claims should be treated as general unsecured claims.

7. *See PBGC v. Bank One, N.A., et al.,* 34 F.Supp.2d 608 (1998) filed December 17, 1997, in the United States District Court for the Southern District of Ohio.

8. On July 17, 1998, Defendant/Appellee Bank One filed a motion to dismiss the adversary proceeding for failure to state a claim and for lack of subject matter jurisdiction. On August 17, 1998, Defendant/Appellee PBGC filed a motion for judgment on the pleadings or, alternatively for summary judgment. Because both motions sought dismissal for lack of subject matter jurisdiction, the bankruptcy court ruled on the motions concurrently.

that follow, this Court finds that the bankruptcy court properly granted the defendants' motions.

■ Title 28 U.S.C. § 1334 governs federal district court jurisdiction over bankruptcy cases. See *In re Wolverine Radio Co.*, 930 F.2d 1132 (6th Cir.1991), *cert. dismissed*, 503 U.S. 978, 112 S.Ct. 1605, 118 L.Ed.2d 317 (1992). In *Wolverine*, the Sixth Circuit identified four types of matters over which the district court has jurisdiction. These include (1) "cases under title 11," (2) "proceedings arising under title 11," (3) proceedings "arising in" a case under title 11, and (4) proceedings "related to" a case under title 11. *Id.* at 1141; see also *Robinson v. Michigan Consol. Gas Co. Inc.*, 918 F.2d 579, 583–84 (6th Cir. 1990) (adopting *In re Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir.1984)).

Here, the parties do not dispute that the underlying adversary proceeding is not a core proceeding—that is, it is not a case under Title 11 or a proceeding arising under Title 11. Instead, the parties dispute whether the adversary proceeding is a non-core proceeding "related to" a case under Title 11.[9] Appellants argue the underlying adversary proceeding is sufficiently related to Debtor SiMetco's Title 11 case to invoke bankruptcy court jurisdiction. In their response, Appellees Bank One and the PBGC argue the bankruptcy properly declined jurisdiction over the adversary complaint because the proceeding did not "relate to" a bankruptcy case pursuant to 28 U.S.C. § 1334(b).

■ Bankruptcy courts obtain jurisdiction over non-core proceedings if the proceeding is a matter "related to" a case under Title 11. Title 28, section 157 states:

A bankruptcy judge may hear a proceeding that is *not a core proceeding but that is otherwise related to a case under title 11*. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

28 U.S.C. § 157(c)(1) (emphasis added).[10]

■ A proceeding is related to a bankruptcy case if "the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re G.T.L Corp.*, 211 B.R. 241, 245 (Bankr.N.D.Ohio 1997) (quoting *In re Pacor, Inc.*, 743 F.2d at 994). Generally, "related to" proceedings involve "matters that are traditional state law actions, not made subject to a federal rule of decision, but that are related, though only peripherally, to a pending bankruptcy case." *In re Hudson Oil Co., Inc.*, 68 B.R. 735, 739 (D.Kan.1986).[11]

9. See Collier on Bankruptcy § 3.01(2)(b)(ii), stating:
[There is no such thing as a core matter which is "related to" a case under title 11]. Core proceedings are, at most, those which arise in title 11 cases or arise under title 11. 15 Collier on Bankruptcy § 3.01(2)(b)(ii), at 3–40 (15th ed.1996).

10. Section 157(c)(2) states:
(2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

28 U.S.C. § 157(c)(2).

11. *See* Collier on Bankruptcy § 3.01(1)(c) discussing proceedings related to cases under Title 11 as follows:

[It seems clear that cases encompassed by section 1334(b) "related proceedings" are those which (1) involve causes of action owned by the debtor that became property of the estate under section 541, and (2) are suits between third parties which "in the absence of bankruptcy, could have been brought in district court or a state court" and whose outcome could conceivably have an effect on the bankruptcy estate].

15 Collier on Bankruptcy § 3.01(1)(c), at 3–28, 3–29 (15th ed.1996) (footnotes omitted).

The Sixth Circuit has adopted the Third Circuit's *Pacor* test to determine "related to" jurisdiction:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Robinson*, 918 F.2d at 583 (quoting *In re Pacor, Inc.*, 743 F.2d at 994). The Sixth Circuit has only slightly modified this test, stating that "situations may arise where an extremely tenuous connection to the estate would not satisfy the jurisdictional requirements." *Id.* at 584 (quoting *In re Salem Mortg. Co.*, 783 F.2d 626, 634 (6th Cir. 1986)).

Applying this standard, the Court decides if the bankruptcy court properly determined that the underlying adversary case is not "related to" Debtor SiMetco's bankruptcy case or to the administration of the bankrupt estate.

### A.

 Appellants recognize that bankruptcy courts "cannot decide disputes between non-debtors where the dispute does not involve property of the estate, does not affect the administration of the estate, and resolution of the inter-creditor dispute will not affect recovery of creditors under a confirmed plan." *In re Spiers Graff Spiers*, 190 B.R. 1001, 1006 (Bankr.N.D.Ill. 1996) (citations omitted). Appellants nonetheless urge that the underlying adversary case does not fall within these categories. Appellants argue the bankruptcy court should have exercised jurisdiction because the outcome of the adversary case may impede administration of the bankruptcy estate. *Id.* at 1007; see also *In re Pacor, Inc.*, 743 F.2d at 988.[12]

Here, Appellants Cunningham and Schott first argue that the outcome of the adversary case will affect the distribution of funds to general unsecured creditors. Appellants contend that prosecuting the adversary case increases the pool of the general unsecured claims to be paid in administering the bankruptcy case. Appellants say their indemnification claims against the estate for monies expended in defending the federal court case have been suspended pending the outcome of the adversary and district court cases.

Second, the appellants argue that the outcome of the adversary case will affect the bankruptcy estate because the PBGC must offset its claim in the bankruptcy case by any amount it recovers against the defendants in the district court case. Appellants say that because the PBGC is entitled to only one recovery, it must reduce its general unsecured claim against the estate by any amount recovered.

 Considering these arguments, the Court does not agree with the appellants' conclusions. Instead, the Court finds that the bankruptcy court properly decided that it lacked subject matter jurisdiction because the outcome to the plaintiffs claims, either positive or negative, would not affect SiMetco's bankruptcy estate.

First, the bankruptcy court properly determined that the adversary proceeding concerns third-party claims not involving the Debtor or the bankruptcy trustee. The plaintiffs do not seek relief against the

---

12. *See In re Dow Corning Corp.*, 86 F.3d 482, 489 (6th Cir.1996) ("An action is 'related to' bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the administration and handling of the bankruptcy estate."), *cert. denied*, 519 U.S. 1071, 117 S.Ct. 718, 136 L.Ed.2d 636 (1997).

Debtor SiMetco, the estate, or the trustee. Rather, the plaintiffs initiated the adversary case in their individual capacities against three corporate defendants. Although the plaintiffs' claims may arise out of facts surrounding the bankruptcy, the plaintiffs' claims in the adversary case are against third-party non-debtors.[13]

Next, the bankruptcy court properly determined that the adversary case does not involve property of the estate. In the adversary case, the plaintiffs asked the bankruptcy court to enjoin the PBGC and the banks from making claim against them in federal court for breach of fiduciary duties. The PBGC's claims involve whether the plaintiffs improperly invested and managed pension fund assets. These issues are not related to the bankruptcy case. If the plaintiffs would prevail in the adversary case, the PBGC's federal case against them would stop. If the plaintiffs would not prevail, the federal case would continue and the plaintiffs may or may not be found liable for breach of fiduciary duty. However, any potential recovery by the PBGC would not affect the bankruptcy estate.

The PBGC's claim in the bankruptcy is a general unsecured claim against Debtor SiMetco for unpaid minimum funding contributions and for unpaid benefit liabilities. The classification and priority of the PBGC's claims were approved by the plan. The plan was confirmed by the Court. Notably, the PBGC did not assert a claim against Debtor SiMetco or the estate arising from breach of fiduciary duties. Instead, these allegations are unique to the federal case against the individual plaintiffs, Bank One, and Star Bank. With its federal suit, the PBGC's seeks recovery distinct from the bankruptcy case.

The fact that Defendants Bank One and Star Bank assert indemnification and contribution cross claims against Defendants Cunningham and Schott in the federal case also supports this conclusion. Generally, third-party claims for indemnification or contribution do not invoke bankruptcy court jurisdiction. See *In re Foundation for New Era Philanthropy*, 201 B.R. 382, 390 (Bankr.E.D.Pa.1996) (stating third-party plaintiff indemnification or contribution action does not affect bankruptcy estate); *In re K & R Mining, Inc.*, 135 B.R. at 271–72 (finding indemnification and contribution claims did not arise out of same transaction or occurrence); *Scott v. Equitable Fed. Sav. & Loan Assoc. (In re German)*, 97 B.R. 373, 375 (Bankr. S.D.Ohio 1989) (explaining resolution of indemnification action would not affect debtor's estate or underlying bankruptcy case).

Considering established law that bankruptcy courts should not exercise jurisdiction over matters that do not affect the Debtor, the trustee, or property of the estate, and considering that indemnification or contribution claims traditionally are insufficient to cause the bankruptcy court to invoke post-confirmation jurisdiction, the bankruptcy court correctly declined subject matter jurisdiction. The PBGC's complaint in the federal case is limited to claims for breach of fiduciary duty. Any effect on the bankruptcy, if at all, is too tenuous to create "related to" jurisdiction. *In re Salem Mortg. Co.*, 783 F.2d at 634.

### B.

Appellants Cunningham and Schott next contend that the bankruptcy court erred by not exercising jurisdiction to interpret the Reorganization Plan, or to enforce its

---

**13.** *See Feld v. Zale Corp. (Matter of Zale Corp.)*, 62 F.3d 746, 753–54 (5th Cir.1995) (citation omitted) (common facts between a third-party non-debtor suit and the underlying "debtor-creditor conflict" does not necessarily "make the third-party action 'related to' the bankruptcy."); *Kandel v. Wampum Hardware (In re K & R Mining, Inc.)*, 135 B.R. 269, 271

(Bankr.N.D.Ohio 1991) (" '[T]he mere fact that there may be common issue of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of' the court's jurisdiction.") (quoting *In re Pacor, Inc.*, 743 F.2d at 994).

own confirmation order entered as part of the Chapter 11 case. Appellants argue the bankruptcy court (1) had jurisdiction to review its own order, and (2) specifically reserved post-confirmation jurisdiction in the Reorganization Plan.

██ Although the appellant's properly state that a bankruptcy court may retain post-confirmation jurisdiction to enforce an agreed plan of reorganization or liquidation, or to review its own orders, the Court finds that the bankruptcy court here appropriately declined to exercise jurisdiction.

██ As earlier stated, bankruptcy courts generally lack jurisdiction over disputes between non-debtor parties where the dispute does not involve property of the estate or affect a creditor's recovery under the plan. *In re Spiers Graff Spiers,* 190 B.R. at 1006. In the Chapter 11 context, bankruptcy court jurisdiction "is sharply reduced following confirmation." *Id.* at 1007. In this regard, bankruptcy court jurisdiction is only "retained to a limited extent post-confirmation to ensure that reorganization plans are implemented." *Id.* (citing *Goodman v. Phillip R. Curtis Ent., Inc.,* 809 F.2d 228, 232 (4th Cir.1987)).[14]

██ In this case, the appellants suggest the bankruptcy court retained post-confirmation jurisdiction over the underlying adversary case by reserving jurisdiction in the Reorganization Plan. Appellants rely on language found in Article XI, § 11.01 of the plan. Appellants say the bankruptcy court retained jurisdiction "to determine any and all disputes arising under or related to the Plan"; "to enforce and administer the provisions" of the Plan; and to enter any order, judgment, injunction or ruling as may be necessary or appropriate in aid of confirmation of and to carry out the intentions and purposes of th[e] Plan and to facilitate implementation and to give full effect to the provisions of the Plan. Appellants' Brief at 3.

The above language is not a unique reservation of post-confirmation jurisdiction. Rather, this language is common to reorganization plans and parties often require it before agreeing to a plan. Notably, the language here recites traditional notions of bankruptcy court jurisdiction and does not expand bankruptcy court jurisdiction to matters outside the scope of the Bankruptcy Code.

Often, as here, bankruptcy courts reserve post-confirmation jurisdiction by restating the court's jurisdiction over cases arising under Title 11 or relating to cases under Title 11. Bankruptcy courts also frequently include language stating the court's broad enforcement powers under 11 U.S.C. § 105. Although post-confirmation jurisdiction may arise under § 105 or from other specific statutory grants within the Bankruptcy Code such as 11 U.S.C. § 1142, post-confirmation jurisdiction is limited to matters concerning the implementation or execution of a confirmed plan.[15]

---

14. *See also Blair v. Finan (In re Elless Co.),* 174 F.2d 925 (6th Cir.), *cert. denied,* 338 U.S. 824, 70 S.Ct. 70, 94 L.Ed. 500 (1949). There, the Sixth Circuit stated:

"In confirming a plan of reorganization, the court may only retain jurisdiction in order to protect its decree, to prevent interference with the execution of the plan, and to aid otherwise in its operation, and may not, through the device of retaining jurisdiction, keep a debtor in tutelage.... any reservation of jurisdiction beyond what is requisite to effectuate a plan of reorganization is beyond the power of the organization court." (citations omitted).

*Id.* at 929.

15. Bankruptcy Code § 1142 provides:

(a) Notwithstanding any otherwise applicable nonbankruptcy law, rule, or regulation relating to financial condition, the debtor and any entity organized or to be organized for the purpose of carrying out the plan shall carry out the plan and shall comply with any orders of the court. (b) The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to

618

Section 105 of the Bankruptcy Code gives bankruptcy courts broad equitable powers to enforce orders or take action necessary to enforce the provisions of Title 11. It states in pertinent part:

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

Bankruptcy courts generally do not consider § 105 to be a "jurisdictional grant." *In re Circle Land and Cattle Corp.* 213 B.R. 870, 877 (Bankr.D.Kan. 1997) (citations omitted).[16] Instead, bankruptcy courts more properly view the provision as an "aid to the exercise of jurisdiction." *In re Deltacorp, Inc.*, 111 B.R. 419, 420 (Bankr.S.D.N.Y.1990).

Importantly, bankruptcy courts cannot use § 105 to give the court jurisdiction which it does not already possess. *In re S.T.R. Corp.*, 66 B.R. 49, 51 (Bankr.N.D.Ohio 1986).[17] In this respect, a reorganization plan "may not delegate unlimited authority to a bankruptcy judge," and § 105 is only meaningful to the extent that the matter arises under "core or related jurisdiction." *In re Schwinn Bicycle Co.*, 210 B.R. 747, 761 (Bankr. N.D.Ill.1997). The bankruptcy court must have subject matter jurisdiction over the dispute. *Id.*

Similarly, the bankruptcy court here does not obtain jurisdiction over the adversary case under 11 U.S.C. § 1142, the Code provision governing implementing a plan of reorganization. Section 1142(b) provides in part:

(b) The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan.

11 U.S.C. § 1142(b).

Section 1142 limits bankruptcy court jurisdiction to matters concerning the implementation or execution of a confirmed plan. *Goodman,* 809 F.2d at 232. Here, the adversary complaint seeks declaratory and injunctive relief to stop a third-party non-debtor case. Because the adversary case does not involve implementing or executing the confirmed plan, the case is not within the jurisdictional grant of § 1142.

As earlier discussed, the bankruptcy court properly concluded that it lacked subject matter jurisdiction over the adversary case. Any outcome of the adversary proceeding would not affect Debtor SiMetco or the bankruptcy estate. Furthermore, even if the outcome of the adversary could be said to affect the debtor or the bankruptcy estate, this Court believes that any connection would be tenuous and therefore insufficient to establish "related to" jurisdiction under 28 U.S.C. § 1334(b).

## IV. Conclusion

For the reasons herein, the Court agrees with the bankruptcy court's decision to dismiss Adversary Case No. 98–

perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan.
11 U.S.C. § 1142.

**16.** *See also In re Packers' Cold Storage, Inc.*, 64 B.R. 265, 267 (Bankr.C.D.Cal.1986) ("Although some courts have construed section 105(a) as conferring equitable jurisdiction on the bankruptcy and district courts, the better view is that section 105(a) is not a jurisdictional statute.").

**17.** *See also Matter of Fesco Plastics Corp., Inc.,* 996 F.2d 152, 154 (7th Cir.1993) (bankruptcy court may not invoke § 105 to expand the Code or to achieve a result inconsistent with the Code);

6189 for lack of subject matter jurisdiction. Accordingly, the Court affirms the bankruptcy court's November 3, 1998 order granting Bank One's motion to dismiss the complaint, and the PBGC's motion for judgment on the pleadings or, alternatively, for summary judgment.

IT IS SO ORDERED.